UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No. 15 CR 102 |
| v. | ) | |
| | ) | Hon. Sharon Johnson Coleman |
| TIMOTHY MASON | ) | District Judge |

**PARTIES' JOINT STATUS REPORT AS TO RESTITUTION**

The UNITED STATES OF AMERICA, by JOEL R. LEVIN, Acting United States Attorney for the Northern District of Illinois, respectfully submits the following joint status report regarding restitution. Counsel for defendant and counsel for the government have conferred regarding restitution, and the parties' positions are set forth in detail below.

**I.    LEGAL STANDARD**

Pursuant to the Mandatory Victim Restitution Act, 18 U.S.C. §3663A, the Court must order restitution to victims of defendant's offense. A "victim," for the purposes of § 3663A, is "a person directly and proximately harmed as a result of the commission of an offense...including, in the case of an offense that involves as an element a scheme, conspiracy, or pattern of criminal activity, any person directly harmed by the defendant's criminal conduct in the course of the scheme, conspiracy, or pattern." § 3663A(a)(2). As defendant was convicted of a mail and wire fraud scheme, restitution must be ordered for losses "caused by the entire scheme, even if the defendant is not convicted of all of the conduct that caused the loss." *United States v. Peugh*, 675 F.3d 736, 742 (7th Cir. 2012) (rev'd on other grounds, *Peugh v. United*

1

*States,* 133 S.Ct. 2072 (2013)). It is the government's burden to establish the restitution amount by a preponderance of the evidence, *Peugh*, 675 F.3d at 742, and in doing so, the government must deduct from the restitution amount any value that a defendant's fraudulent scheme imparted to the victims. *United States v. Allen*, 529 F.3d 390, 396 (7th Cir. 2008). While the government bears the burden of establishing loss, a defendant's "wholly unsubstantiated statements are not enough to undermine, nor even question, the court's acceptance of the government's proof of loss." *United States v. Sensenmaier*, 361 F.3d 982, 989 (7th Cir. 2004); *United States v. Psihos*, 683 F.3d 377, 782 (7th Cir. 2012) (court may conclude that allegations of undocumented expenses do not overcome the government's proof).

## II. GOVERNMENTAL VICTIMS

The parties agree that the City of Chicago and the Pennsylvania Department of Environmental Protection suffered loss as a result of the scheme, although the parties disagree as to the amount of the loss.

1. **City of Chicago**.

a. Government's Position: The City of Chicago incurred a $625,845.12 loss, which is comprised of (1) funds it expended which the original grantors (the Department of Energy and the Illinois Department of Economic Opportunity) did not reimburse the City for grant payments to 350Green which the City, due to 350Green's fraud, could not establish resulted in the installation of electric charging infrastructure; and (2) salary and administrative costs incurred in an internal investigation and litigating grant settlements with the DOE and DCEO. This amount includes $152,450 in Coulomb chargers which were purchased, but not

installed, because of the delays resulting from the collapse of 350Green's contract with the City of Chicago.

  b.  **Defendant's Position:** The defense position is that this amount should be reduced by $152,450, as that amount reflects the amount paid by 350Green for Coulomb chargers which were obtained by JNS Power, the company who took over the Chicago Grant for 350Green.

  2.  **Pennslyvania Department of Environmental Protection.**

  a.  The parties agree that PADEP is entitled to $190,000 in restitution representing grant funds it expended to pay the false and fraudulent Actium Power invoices.

### III. MANUFACTURER A

The parties dispute whether or not Manufacturer A is a "victim" for the purposes of restitution. However, the parties do agree that, if the Court should determine that Manufacturer A is a victim, the amount owed Manufacturer A is $405,973.89 not only for chargers for which it was never paid, but also for compensating other vendors for 350Green's failure to pay for the shipping and storage of the chargers.

  A.  **Government's Position**

Mason drew down on grant funds primarily based on false claims that 350Green had purchased electric vehicle chargers and paid Actium Power for those charges. Actium Power was not the supplier of the chargers. The true manufacturer of the chargers, Manufacturer A, was never paid the full amount for the chargers it supplied to 350Green or for the debts owed to 350Green by other vendors who shipped

and stored Manufacturer A's chargers.[1] *See United States v. Clark*, 787 F.3d 451, 463–64 (7th Cir. 2015) (holding that, even where defendant's false representations regarding payment were made to the government, defendant's employees still suffered loss when they were not compensated in the amount that defendant falsely represented to the government that they were paid). In essence, defendant diverted funds which should have gone to Manufacturer A by obtaining money from the City of Chicago by falsely representing that the manufacturer of the chargers had been paid. As a result, Manufacturer A was not paid because defendant stole the money intended for Manufacturer A. As such, defendant is responsible for this loss as it is loss resulting from his fraudulent scheme, and restitution is mandatory pursuant to Section 3663A.

    B.    **Defendant's Position**

It is the position of the defense, as made clear by the indictment and plea agreement, that vendors like Manufacturer A are not victims of the offense of conviction in this case and thus are not part of a restitution calculation under the Mandatory Victim Restitution Act, 18 U.S.C. §3663A.[2] The indictment makes perfectly clear that the victims are the governmental agencies with whom 350Green entered grant agreements. The indictment identifies *only* the governmental agencies

---

[1] Manufacturer A did receive partial payment from the company that took over the Chicago grant from 350Green.

[2] This is not to say that vendors did not lose money. The appropriate remedy, however, is not to include them as victims under the MVRA. The remedy is to pursue civil action regarding money that they believe they are owed; or, as many of them have, obtain reimbursement from the company that took over the Chicago grant from 350Green.

as entities that the scheme sought to defraud and from whom the scheme sought to obtain money and property.

> Beginning no later than August 2010, and continuing until at least September 2012, at Chicago, in the Northern District of Illinois, and elsewhere,
>
> TIMOTHY MASON and MARIANA GERZANYCH,
>
> defendants herein, devised, intended to devise, and participated in a scheme to defraud and to obtain money and property from the City of Chicago, State of Pennslyvania [sic] Department of Environmental Protection, the Association of Bay Area Governments, and the Bay Area Air Quality Management District by means of materially false and fraudulent pretenses, representations, and promises, and by concealment of material facts, which scheme is further described in the following paragraphs.

(Docket #1, p. 4)

Likewise, the plea agreement identifies only the municipalities as victims. The plea agreement repeats the same language as the indictment regarding whom the scheme sought to victimize, "Timothy Mason devised, intended to devise, and participated in a scheme to defraud and to obtain money and property from the City of Chicago, State of Pennsylvania Department of Environmental Protection, the Association of Bay Area Governments, and the Bay Area Air Quality Management District . . ." (Docket #67, par. 6) The plea agreement then goes on to specifically identify the victims for purposes of restitution:

> Regarding restitution, defendant acknowledges that pursuant to Title 18, United States Code, Section 36634, the Court must order defendant to make full restitution **to the victim governmental agencies** in an amount to be determined by the Court at sentencing, which amount shall reflect credit for any funds repaid prior to sentencing.

(Docket #67, par. 13, emphasis added)

Simply put, nowhere in the indictment or plea agreement are vendors identified as victims, and the plea agreement explicitly identifies the victims for purposes of restitution. These facts, in and of themselves, should make clear that vendors like manufacturer A are not victims for purposes of the MVRA.

In addition, however, case law makes clear that vendors are not victims. With all due respect to the government's position, vendors are quite simply not the victims of the scheme charged in the indictment or the admission contained in Defendant's guilty plea. *See, e.g.*, *United States v. Kiefer*, 794 F.3d 850, 854 (7th Cir. 2015) (*per curiam*) (finding plain error where district court ordered restitution to banks that the defendant admitted to robbing, but for which he was not charged and did not agree in his plea agreement to pay restitution.) As the *Kiefer* court explained, a district court may impose restitution only where there is a statutory basis to do so. *Id* at 853, *citing*, *United States v. Westerfield*, 714 F.3d 480, 489 (7th Cir.2013); *United States v. Webber*, 536 F.3d 584, 601 (7th Cir.2008). Without an agreement as part of a plea, the restitution statutes allow restitution "only for victims of an offense of conviction." *Id. citing*, 18 U.S.C. § 3663(a)(1)(A), (a)(3); § 3663A(a)(3); *Hughey v. United States*, 495 U.S. 411, 416, 110 S.Ct. 1979, 109 L.Ed.2d 408 (1990); *United States v. Frith*, 461 F.3d 914, 919–20 (7th Cir. 2005); *United States v. Wells*, 177 F.3d 603, 608–09 (7th Cir.1999). Restitution does not "permit a victim to recover for losses stemming from all conduct attributable to the defendant." *Hughey* at 418.

Here, the loss of money by Manufacturer A is no doubt due to 350Green's failure to pay. But Defendant was neither charged nor convicted of a scheme to

defraud Manufacturer A (or any other vendor). The indictment does not allege nor does the plea agreement indicate that Defendant made or caused to be made any false statements to Manufacturer A to induce Manufacturer A to supply chargers to 350Green. Under these circumstances, Manufacturer A is not a victim for purposes for purposes of restitution.

Moreover, as the definition of "victim" in 18 U.S.C. § 3663(a)(2) makes clear, vendors like Manufacturer A do not qualify for restitution. That section defines a victim as:

> a person directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered including, in the case of an offense that involves as an element a scheme, conspiracy, or pattern of criminal activity, any person directly harmed by the defendant's criminal conduct in the course of the scheme, conspiracy, or pattern.

18 U.S.C. §3663A(a)(2).

The first situation, (a victim directly and proximately[3] harmed by the offender's specific conduct that is the basis of the offense of conviction) does not apply. Defendant's specific conduct forming the basis of conviction was defrauding the governmental entities by claiming he had paid subcontractors when he had not. He was attempting to obtain money from the City of Chicago, for example, to *pay* vendors and subcontractors and keep the grant afloat. As the indictment and plea make clear,

---

[3] Direct and proximate harm means that the victim would not have suffered a loss would not "but for" the offense and that the loss was "foreseeable." *See, United States v. Donaby*, 349 F.3d 1046, 1053–54 (7th Cir.2003).

the basis of conviction was attempting to obtain money from governmental entities to which 350Green was not yet entitled.

With regard to the second situation (a person who is directly harmed by the defendant's criminal conduct in the course of a scheme), vendors and subcontractors were not harmed by criminal conduct. The government argues Defendant made false statements to subcontractors and vendors (essentially that 350Green was not at fault for why they were not paid and/or that subcontractors and vendors eventually would be paid) that induced them to provide goods and services. While perhaps subject to a civil suit, this is not "criminal conduct," as required by the definition of "victim" in § 3663A, and it is certainly not the criminal conduct charged in the indictment.

The case relied by the government, *United States v. Clark*, 787 F.3d 451, 463–64 (7th Cir. 2015) is distinguishable. In *Clark*, the Seventh Circuit held that employees who were not paid a prevailing wage were victims for restitution purposes even where the defendant's conviction was for false statements to the federal government and the State of Missouri certifying that he had paid the prevailing wage. *Id*. at 454-455. The court suggested that for one count of conviction, a false statement made to the Missouri Department of Transportation long after the job was done, that the employees may not have been victims.[4] With regard to the false statements made on U.S. Department of Labor forms, the court found that the employees were victims for purposes of restitution. *Id*. at 462. That conclusion, however, was based on a particular section of the contract that allowed the "federal government and MODOT,

---

[4] Conviction on that count was reversed, so the court did not have to reach a conclusion.

8

upon learning of a subcontractor's failure to pay its employees the federal prevailing wage, to intervene and divert project funds earmarked [for Defendant] to his undercompensated employees." *Id*. Because of this provision, the court concluded that the:

> false payroll certifications deprived the government of an opportunity to invoke this diversion mechanism and make [the defendant's] undercompensated employees whole. Had [the defendant] been truthful on the certification forms (listing the real hourly wage he was paying his drivers), his employees could have been fully compensated with funds that instead were paid to him. Accordingly, [the defendant's] false statements proximately caused losses to his employees.

*Id*.

Here, the government has pointed to no similar provision in the grant agreement entered into by the City of Chicago and 350Green. There is no diversion clause in the contract allowing funds to be paid directly to vendors like Manufacturer A.

## IV. CHICAGO SUBCONTRACTORS

The parties dispute whether or not the subcontractors to the Chicago project are considered victims under Section 3663A, and, if this Court determines that they are victims, the loss amount suffered.[6]

### A. Government's Position

Mason owes restitution to subcontractors who relied on his false statements concerning his reasons for failing to pay them for work on the Chicago project. Mason, as he admitted in his plea agreement, made and caused to be made false statements

---

[6] If the Court determines that the subcontractors are victims, the parties request the opportunity to submit additional supporting documents regarding the scope of loss. In any event, the parties will be prepared to tender such documents to the Court at the October 12, 2017, status hearing scheduled in this matter.

to subcontractors in order to conceal his fraud by inducing them to continue to work on the project. Those false statements were made principally after approximately March 28, 2012, when subcontractors stopped work due to nonpayment and Chicago threatened to terminate 350Green's contract. The uncompensated expenses of the Chicago contractors who continued to work on the project are also part of the actual loss, because those contractors relied upon Mason's false representations to their detriment. *See United States v. Wilkozek*, 822 F.3d 364, 369 (7th Cir. 2016). Mason's false statements were essential to perpetuating his fraudulent scheme. Had the contractors stopped work a second time, 350Green would have lost the contract with the City. As such, the loss suffered by the subcontractors is part of the loss caused by Mason's scheme.

Specifically, the following Chicago subcontractors have submitted documentation establishing uncompensated losses resulting from work performed after March 28, 2012, in reliance on Mason's false statements:

Company A: $75,959.58[7]

Company B: $22,677.50; and

Company C: $19,144.50.

Total: $117,781.58

---

[7] Company A was paid $90,000 by JNS Power in settlement of outstanding liabilities. That sum reflects approximately 32% of the amount owed by 350Green to Company A. Pending further information from Company A which might allow the government to tie the reimbursement to specific invoices, the government has accounted for this repayment by making a proportional reduction to the $111,704.58 loss suffered by Company A, such that the loss is reduced by 32% ($35,745), resulting in a loss of $75,959.58

To the extent that defendant attempts to "carve out" work done on I-Go's solar canopy project, that project was part and parcel of 350Green's initial proposal to the City in August 2010, and was monitored by the City in the same manner as the rest of the contract. As the City's emails to Mason and Gerzanych indicate, performance on the charging stations and accompanying solar canopies in April 2012 was critical to the completion of the Chicago Grant project. Had 350Green been truthful, and confessed that they did not have the financial ability to pay the subcontractors in this aspect of the project, they would have been immediately terminated. Instead, Mason lied to the City and to subcontractors, and induced all parties to continue working.

### B. Defendant's Position

For the same reasons set forth above that Manufacturer A and other vendors are not victims for purposes of the MVRA, subcontractors are not victims of Defendant's offense for purposes of calculating restitution. They are identified neither in the indictment nor the plea agreement as victims, and they do not fit the definition of "victim" found in § 3663A.

The government argues that Defendant's false statements to subcontractors "concerning his reasons for failing to pay them for work on the Chicago project," are sufficient to order restitution to certain subcontractors for work done or materials supplied past a certain date. Those statements are quite simply not part of the offense of conviction. *See, e.g., United States v. Ocasio*, 750 F.3d 399, 412-413 (4th Cir. 2014) (Insurance company was not a victim for restitution purposes because the acts that harmed the insurance company were not "an element of the offense of conviction, or an act taken in furtherance of a scheme, conspiracy, or pattern of

11

criminal activity that is specifically included as an element of the offense of conviction.") The statements the government relies on were not elements of the offense for the charge to which Defendant entered a plea of guilty, nor did those statements comprise part of the offense.

Moreover, the government argues that Defendant "admitted in his plea agreement, [that he] made and caused to be made false statements to subcontractors in order to conceal his fraud by inducing them to continue to work on the project." Defendant did not make that admission in his plea agreement. He admitted that he made false statements to conceal the scheme. (Docket #67, p. 7) The plea does not contain language indicating that he made false statements to induce subcontractors to continue working. In addition, the false statement to subcontractors referenced in the plea was that "Mason told subcontractors and vendors that payment was late due to the failure of the City of Chicago to pay its invoices on time, although Mason knew at the time he made this statement that this statement was false." *Id.* This statement, while false, does not claim that 350Green had sufficient funds of its own to pay subcontractors. It is a statement acknowledging that 350Green did not have sufficient funds to pay for past due bills, but would be able to do so when grant money arrived.

The case cited by the government, *United States v. Wilkozek*, 822 F.3d 364, 369 (7th Cir. 2016), does not support its position that subcontractors are victims. *Wilkozek* does point out that a person (third party lenders in that case) must actually rely on a false statement to his detriment to be considered a victim for restitution

12

purposes. *Id*. at 369. But unlike this case, the defendant in *Wilkozek* "*admitted*" that the third-party lenders actually relied on the fraudulent applications he prepared." *Id*. (emphasis in original) A case citied in *Wilkozek*, *United States v. Farano*, 749 F.3d 658, 666 (7th Cir. 2014), makes clear that evidence of actual reliance is required. "There is as yet no evidence in this case of such reliance by the refinancing banks, and in its absence those banks cannot be counted as "victims" for restitution purposes." *Id*. Here, there is no admission by Defendant, and no evidence of actual reliance by subcontractors.[8]

In the event the Court determines that restitution is owed to subcontractors, the defense position is that the Continental Electric amount of $75,959.58 and the Litgen Concrete Cutting amount of $22,677.50 are for work that was performed not on the City of Chicago Grant, but on a separate agreement between 350Green and IGO for the installation of solar canopies. As such, those amounts are not appropriate for restitution even if those subcontractors are considered victims. The defendant agrees that, with respect to the claim by RJ Underground, $19,144.50 of the claimed amount was for work performed on the Chicago project after March 28, 2012.

---

[8] Further distinguishing the instant case from *Wilkozek*, and making clear that subcontractors and vendors are not victims for restitution purposes in this case, the indictment in *Wilkozek* actually identified the third party lenders as victims of the scheme who relied on the defendant's false statements in purchasing the mortgages. *See, United States v. Wilkozek*, 03 CR 252, docket 1, par. 1e. (N.D. Ill.). It appears Wilkozek pled guilty to a different indictment and stipulated to the offense from the 03 CR 252 indictment. *See*, 02 CR 576 (N.D.Ill.) docket 124. Here, as explained above, neither the indictment nor plea agreement identify subcontractors or vendors as victims of the charged scheme.

## V. CONCLUSION

For the reasons stated above, it is the government's position that total restitution is $1,339,600.59.

It is the defense position that the total amount of restitution should be $663,395.12.

                          Respectfully submitted,
                          JOEL R. LEVIN
                          Acting United States Attorney

                          By: *s/*Maureen E. Merin
                          Assistant United States Attorney
                          219 S. Dearborn Street
                          Chicago, Illinois 60604
                          (312) 353-1457